162 So.2d 892

**William McCURDY**

v.

**STATE.**

**5 Div. 626.**

Court of Appeals of Alabama.

April 7, 1964.

Walker & Hill, Opelika, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

This appellant was convicted of the offense of grand larceny, and was sentenced to serve five years in the penitentiary.

At a Negro ball game at Felton Little Park in Auburn, Alabama, on the night of September 26, 1961, two police officers, Dale Howard and Vandy Copeland, arrested Joe McCurdy, defendant's brother, on a charge of disorderly conduct and were taking him out the back aisle behind the bleachers.

In the words of the prosecuting witness, Dale Howard:

"Several people blocked our way and Joe McCurdy balked, stopped on us. We got hemmed up in the crowd, couldn't go any farther with him. When we got Joe just as far as we could go, I noticed William McCurdy come from my left. I tried to get the people back, a whole lot of people were at my back, and Officer Copeland and myself were the only officers on that side at that time. Fearing mob action I pulled my revolver and backed them up one time, but they only backed a few feet. I turned around, put my pistol back in my holster and tried to get Joe McCurdy to proceed out of the park. Officer Copeland was holding him while I was trying to get the crowd back. I had a traffic flashlight with a red cone on it approximately six inches long, and I used that; I hit Joe, William McCurdy jumped on my back and that was when we went to the ground. As I was going down he taken my pistol away from me. I didn't see him get my pistol. I went for it as we were going to the ground, and it was coming out of the holster and I didn't have a hold of it. Right after that I was on the ground and the people, the ones I mentioned previously were kicking me

on the head and stomping me. At one time when I raised up William McCurdy struck me on the left side of my face and he had my pistol at that time. I did not recognize it as being my pistol, but I knew it was mine on account of it was gone while we were going down. The value of my pistol was a little better than $60.00. It was my personal property."

On cross-examination the witness testified:

"At or near the point where Joe McCurdy stopped and we could not get him any farther, his wife asked him for the keys to the house and the car. I told her we didn't have time to get the keys or go into Joe's pocket, but they would be at the police station. That is when we couldn't get any further and I backed up the people. I drew my revolver and helt it on the ground. There were forty or fifty people there. The witness was asked:

"How could you see a man jumping on you from behind you?"

"He replied: 'I didn't see him. I saw him when we went to the ground. * * William McCurdy struck me under the left eye with his fist. That's when I fell back on the ground. He had the pistol in his hand when he hit me. I did not see him take the pistol out of my holster.' "

Officer Copeland testified:

"Officer Howard and I had arrested Joe McCurdy and we were in the process of leaving the ball park when we met some opposition from some colored people, and shortly thereafter I saw William down out of the bleachers. Joe was giving trouble, resisting, and a pretty good crowd was pressing in among us, and actually stopped our progress, we couldn't go any farther. William was standing a couple or three feet to my right. Joe and I were scuffling and then we both went to the

ground and I saw William go across and to the left toward the position Officer Howard was in, and that's the last time I saw William. At the time he crossed in front of us Joe and I went to the ground."

On cross-examination Officer Copeland testified:

"I don't know how Sergeant Dale Howard lost his pistol. I didn't see anybody steal his pistol there on that occasion. I didn't see William Mc-Curdy jump on anybody. I wasn't in position to see."

This was all of the evidence offered against the defendant. The court, sitting en banc, has carefully read and considered this evidence, and each member of the court is of the opinion that said evidence creates nothing more than a mere suspicion of defendant's guilt, which is not sufficient for a conviction in a criminal case. Ex parte Grimmett, 228 Ala. 1, 152 So. 263.

The motion to exclude the state's evidence should have been granted.

Reversed and remanded.